**UNITED STATES of America**

v.

**Thomas CALLAHAN, Frank "Sonny" Campbell, Thomas Kapatos, John Pierce and Henry Speditz, Defendants.**

**No. 68 CR. 684.**

United States District Court
S. D. New York.

June 4, 1969.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, Peter Fleming, Jr., Assistant United States Attorney, of counsel. Theodore Rosenberg, Brooklyn, N. Y., Joshua N. Koplovitz, of counsel, Koplovitz and Fabricant, New York City, for defendant, Thomas Callahan.

Joseph E. Brill, New York City, for defendant, Thomas Kapatos.

### MEMORANDUM DECISION and ORDER

MOTLEY, District Judge.

Defendants Callahan and Kapatos have been charged in count one with conspiracy to violate 18 U.S.C. § 2113(a) (bank robbery) and § 2113(d) (use of dangerous weapon in connection therewith). It is alleged, *inter alia,* that as a part of said conspiracy defendants: 1) would take and attempt to take from the person and presence of another property and money belonging to and in the custody of the First National Bank of Passaic County in Paterson, New Jersey; 2) in doing so would assault persons and put the lives of other persons in jeopardy through the use of a dangerous weapon; and 3) in so doing would travel in and would employ stolen motor vehicles. In connection with these allegations, it is further alleged that certain overt acts were committed in this District and elsewhere.

In count 2 it is alleged that an attempt to rob the New Jersey bank took place in the Southern District of New York and elsewhere on or about May 1, 1964 and in count 3 that in the course of this attempt persons were assaulted and the lives of

other persons were put in jeopardy by the use of a dangerous weapon. Counts 4 and 5 charge similar offenses except that the alleged date is on or about June 1, 1964.

Count 6 charges a successful robbery on December 21, 1964 with assaults and the jeopardizing of lives with a dangerous weapon in connection therewith in count 7.

Counts 8 and 9 charge the knowing transportation of a stolen motor vehicle in interstate commerce on or about April 19, 1964 and December 21, 1964, respectively, in violation of 18 U.S.C. §§ 2312 and 2.

■ 1. Defendants' first challenge is to the venue of counts 2 through 7. Defendants seek an inspection of the grand jury minutes of this District and the District of New Jersey and a preliminary hearing to determine whether the prerequisites exist for a criminal prosecution of the foregoing counts in this District.[1] Defendants believe that they are entitled to an order of dismissal on the ground that as to counts 2 through 7 the venue is not properly laid in this District. Defendants correctly assert that there must be proper venue as to each of these substantive counts, United States v. Bozza, 365 F.2d 206 (2d Cir. 1966), and that there isn't any violation of 18 U.S.C. § 2 alleged in the indictment as to any of those counts which would form a basis for proof that certain accessorial acts were committed in this District.

■■ The government's position as to determination of the venue question is correct, i. e., that it should await the trial. The venue question as to each of the challenged counts is a question of fact so entwined with the merits of each count that a decision should not be made prior to trial but postponed until trial. Rule 12(b) (4), Fed.R.Crim.P., cf. United States v. Fargas, 267 F.Supp. 452 (S.D. N.Y.1967). The government in its answering affidavit alleges that the evidence will establish that both the planning and initial steps in the alleged crimes (counts 2–7) took place within this District and, consequently, the prosecution is properly brought here. United States v. Gillette, 189 F.2d 449 (2d Cir. 1951), cert. denied, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951); 18 U.S.C. §§ 3237(a) and 2. The government also argues that its proof will show that counts 2 through 5 are attempts to culminate the conspiracy, which is properly laid according to the allegations in the indictment in this District, United States v. Valle, 16 F.R.D. 519 (S.D.N.Y. 1955), and counts 6 and 7 are the actual culmination of the conspiracy, making the prosecution of all of the counts, 1 through 7, proper here. cf. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945); 18 U.S.C. § 3237. The fact that the indictment does not cite 18 U.S.C. § 2 in connection with counts 2 through 7 is of no legal consequence, United States v. Grosh, 342 F.2d 141 (2d Cir. 1965), cert. denied, 381 U.S. 936, 85 S.Ct. 1767, 14 L.Ed.2d 700, because one charged as a principal, as defendants are with respect to counts 2–7, may be convicted as an aider and abettor, United States v. Ramsey, 374 F.2d 192 (2d Cir. 1967), and tried in the district in which his accessorial acts took place. United States v. Bozza, *supra.*

■■ Finally, says the government, the indictment is sufficient on its face to show proper venue in this District in that it charges that each of the offenses alleged in counts 2 through 7 took place in this District and elsewhere; and this theory is, of course, correct. United States v. Valle, *supra.* Defendants are not entitled to inspect the grand jury minutes in the absence of a showing that grounds may exist for a motion to dismiss because of matters occurring before the grand jury. Rule 6(e) Fed.R.Crim.P. Here we do not even have a naked allegation of defendants that there was no

1. Rules 6, 12, and 18, Fed.R.Crim.P., and Art. III, Sec. 2, Clause 3 and the Sixth Amendment to the Constitution are cited by defendants as authority for these requests.

evidence before the grand jury to support venue in this District. Defendants' request is simply for inspection and a hearing to determine if the jurisdictional prerequisites exist.

■■ The cases in this Circuit, and elsewhere, have uniformly held that if the indictment is valid upon its face, and was returned by a legally constituted, unbiased grand jury, this court is not to review the sufficiency of the evidence before that grand jury. United States v. Ramsey, 315 F.2d 199 (2d Cir. 1963), cert. denied, 375 U.S. 883, 84 S.Ct. 153, 11 L.Ed.2d 113 (1963); United States v. Marth, 42 F.R.D. 432 (S.D.N.Y.1967); United States v. Calise, 217 F.Supp. 705 (S.D.N.Y.1962). Once it appears that the indictment is valid on its face and was returned by a legally constituted and unbiased grand jury, the indictment is sufficient to call for a trial on the merits, and allegations by defendant that the grand jury had no competent evidence to connect him with the crime charged are insufficient, under Rule 6(e), Fed.R.Crim.P., to give defendant a right to grand jury minutes. United States v. Reyes, 280 F. Supp. 267, 269 (S.D.N.Y.1968); United States v. Wallace, 272 F.Supp. 838 (S.D. N.Y.1967); United States v. Garcia, 272 F.Supp. 286 (S.D.N.Y.1967); United States v. Barnes, 313 F.2d 325 (6th Cir. 1963). The Supreme Court expressly refused to establish such easy accessibility to grand jury minutes in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

If the proof should fail to establish venue in this District for each of the challenged counts, essential elements of the government's case, the motion to dismiss can always be renewed at the end of the government's case and must then be granted. See, United States v. Gross, 276 F.2d 816, 819 (2d Cir. 1960), cert. denied, 363 U.S. 831, 80 S.Ct. 1602, 4 L. Ed.2d 1525.

■ 2. At this pretrial stage, defendants also seek a hearing upon another issue. Rule 12(b), Fed.R.Crim.P. Defendants claim that prior to the instant indictment they were subpoenaed to appear before a federal grand jury sitting in Newark, New Jersey at which time they were the targets of the investigation. Upon arriving at the Post Office Building in Newark, defendants were allegedly ushered into the grand jury anteroom where there were 10 or 15 other prospective grand jury witnesses. The assistant United States Attorney conducting the examination allegedly made a point of calling out defendants' names in the presence of these other witnesses (apparently victims of the alleged robbery) and "took great pains to make certain that each prospective witness had a good opportunity to view the defendants." Defendants further allege that they were also invited into a suite of rooms, under the pretext of the necessity to sign a voucher for their witness fees, where they were surreptitiously photographed. Defendants claim that this procedure which took place without notice to or the presence of counsel which they had retained was, in the totality of the circumstances which surrounded the confrontation here, so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and violated their rights to due process of law. Defendants rely upon the due process rule of Stovall v. Denno, 388 U.S. 293, 299, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) since this alleged confrontation took place in 1965 prior to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The government's reply is that determination of this issue should be delayed until such time as the purportedly tainted identification evidence becomes an issue at the trial. The court agrees. Rule 12(b) (4). The government points out that it does not now know what witnesses it will produce at trial.

3. Defendants next move, pursuant to Rule 12, Fed.R.Crim.P. and the Sixth Amendment to the Constitution, for an order compelling the United States Attorney to make available to defendants

for interrogation, pursuant to their "Right of Confrontation", any "secreted" witnesses against defendants, including one Charles Roberts. In addition, defendants seek an order directing the appropriate authorities at New York State penal institutions (including state prisons at Dannemora, Sing Sing, and Green Haven) to make available to defendants the prison records relating to the "criminal activities and state of mental health of the said Roberts." With respect to the production of Roberts, in an accompanying affidavit, defendant Kapatos alleges as follows:

"It is particularly necessary because I believe that my alleged involvement in this case has been accomplished largely at the hands of an agent-informer—one Charles Roberts—who admittedly has a history of mental disorder and a long criminal record with confinement in State penal institutions whose records are not available to me in preparation and planning my defense. I am informed that Roberts has a strong motive to fabricate my complicity herein, having previously sworn either to kill or "frame" me. (Parenthetically it should be noted that upon the pretrial hearing requested herein, I intend to produce witnesses who will so testify.) In any event, the informer's unusual relationship to this case requires in the interest of justice that he be produced for interrogation in this case in the preparation of my defense and that the records relating to his criminal activity and mental health be made available to me."

There is no allegation that Roberts' whereabouts are unknown to defendants or that they have attempted to interview him or any other prospective witness and have been prevented from doing so by the United States Attorney or anyone else.

■ Nothing in Rule 12 seems to justify reliance upon it as the basis for a motion to produce "secreted" witnesses for interview or documents for review before trial. Apparently, defendants intended to rely upon Rule 16, Fed.R.Crim. P., at least as far as the request for

production of documents before trial is concerned. But even that rule limits such requests to documents "within the possession, custody or control of the government." Defendants suggest no reason why, if Roberts is a prosecution witness at the trial, the subpoena power of this Court will not suffice to produce material records in the custody of state officials.

■ The court does not understand the government to challenge the right of defense counsel to interview before trial and out of the presence of the United States Attorney, any willing prospective prosecution witnesses known to defendants. See, Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966) and Coppolino v. Helpern, 266 F.Supp. 930 (S.D.N.Y.1967).

■ 4. Next, defendants ask for a severance of counts 8 and 9 from counts 1 to 7 inclusive on the ground that the former are wholly unconnected and dissimilar to the first seven counts. Rule 8(a), Fed.R.Crim.P. As the government points out, this claim is apparently made as a result of defendants having overlooked the specific allegations of paragraph 5 of count 1 of the indictment which alleges that as a part of the alleged conspiracy defendants "would travel in and would employ stolen motor vehicles." Rule 8(a) permits the grand jury to charge two or more offenses in the same indictment if the offenses charged "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

5. The administrative inquiry sought by defendants as to the circumstances of any electronic eavesdropping or other surveillance of these movants or their property, if any, has been consented to by the government. The United States attorney shall report to the court the results of his investigation.

■ 6. Defendants admit that their motion to dismiss the indictment on the grounds that the panel of grand jurors was unconstitutionally drawn, summoned and selected is made despite truly recent

Second Circuit decisions reviewing and rejecting similar claims, United States v. Bennett, 409 F.2d 888 (2d Cir., Feb. 26, 1969); United States v. Wolfson, 405 F. 2d 779 (2d Cir., Dec. 27, 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L. Ed.2d 479 (1969); United States v. Caci, 401 F.2d 664, 671 (2d Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969), and despite a comprehensive recent review of the issue by another judge of this Court. United States v. Leonetti, 291 F.Supp. 461 (S.D.N.Y.1968). Consequently, in the absence of a claim that the present motion presents a challenge to the grand jury selection process not previously made and rejected recently in this Circuit, the motion is without merit.

▮ 7. The government has consented to turn over all Rule 16(a) (1) Fed.R.Crim.P., statements of defendants. The government is not required by Rule 16(a) (2) to disclose to defendants the results of any photographing of defendants allegedly done for identification purposes at a "show up" in New Jersey since such photography, whatever its relevance to violation of defendants' constitutional rights, is not within the contemplation of that part of Rule 16 which requires the government to disclose the results of "scientific tests or experiments."

8. Relying upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which makes clear the prosecutor's duty upon a trial in a criminal case to divulge to a defendant upon demand all exculpatory material, defendants move for an order requiring the United States Attorney to divulge all such material in his possession or control at this pretrial stage without specifying any item of evidence sought or claimed to be exculpatory. And, in addition, defendants specifically seek from the United States Attorney: 1) the names of all penal institutions in which Charles Roberts, a prospective prosecution witness referred to above, has been incarcerated; 2) all prison records relating to Robert's criminal activities and state of mental health; and

3) the names and addresses of all witnesses interviewed by the United States Attorney's office or any other federal agency which the prosecution does not intend to use.

▮ The first two items, demanded without elaboration, are not the sort of demands contemplated by *Brady*. To require the government to "disclose" this material would be to require it to develop Kapatos' case. These items are more properly available to Kapatos through the subpoena power, Rule 17(c), Fed.R.Crim. P., should Roberts testify at the trial. If the production of items 1 and 2 at trial would occasion delay and if it appears likely that Roberts will testify, Kapatos might be able to obtain an order for their production shortly before trial, as Rule 17(c) provides. Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 71 S. Ct. 675, 95 L.Ed. 879 (1951); United States v. Elife, 43 F.R.D. 23 (S.D.N.Y. 1967). As to the third item, again demanded without even claiming any relevance to possibly exculpatory matter, the government says that this request appears to be a means of identifying those whom the government will call. The court agrees. The government need not disclose its witnesses prior to trial. United States v. Burgio, 279 F.Supp. 843, 847 (S.D.N.Y.1968); United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D. N.Y.1965).

▮ Defendants do not make any more definite their general demand for exculpatory matter. Such a vague catch-all demand before trial is not what is envisioned by Brady v. Maryland, *supra;* United States v. Gleason, 265 F.Supp. 880 (S.D.N.Y.1967). At the very least, some specific item of evidence claimed to be exculpatory must be demanded and refused. Brady v. Maryland, *supra,* does not put on the government a general duty to help a defendant find witnesses who might be favorable to defendant or discover evidence which might aid the defense. United States v. Jordan, 399 F. 2d 610, 615 (2d Cir. 1968). The general demand, in addition to items 1, 2 and 3, amounts to just such a call for help. The

prosecutor's duty under *Brady* is plain. He may not upon the trial suppress any exculpatory evidence after demand. Although the Court of Appeals did not specifically pass upon the question in the *Jordan* case, *supra*, effective invocation of the *Brady* test in most cases before trial is highly doubtful. United States v. Wolfson, 289 F.Supp. 903, 914–915 (S.D. N.Y.1968); United States v. Cobb, 271 F. Supp. 159, 163–164 (S.D.N.Y.1967); United States v. Manhattan Brush Co., *supra*. But see United States v. Gleason, *supra*.

9. Defendant Kapatos seeks 81 particulars by his final motion which is one for a bill of particulars. The government has consented to furnish the information relating to 21 particulars. As to items 79, 80 and 81, as the government points out, these items are more properly related to defendants' motion regarding any eavesdropping, to which the government has already consented to make the necessary preliminary administrative investigation and report to the court. The government replies that items 9, 17, and 18,[2] are irrelevant in that they relate to items which the government need not prove upon the trial of this indictment. But in the case of defendant Callahan who made a similar motion for a bill of particulars containing 32 items, the government consented to give virtually the same information to that defendant (item 3) as requested by Kapatos in item 17. The government is, therefore, required to comply with Kapatos' request No. 17. The government is not required to comply with Nos. 9 and 18.

There are three items, Nos. 32, 47, and 55, which the government has not consented to give defendant Kapatos which are indistinguishable from Nos. 40, 64 and 69 to which the government has consented, and the government will therefore be required to give the information requested in the former group to Kapatos. There are two other items to which the government consented with respect to the Callahan motion (i. e., 1 and 27), the substance of which is identical to that of three items requested by Kapatos in his bill. These items are 4, 74, and 78, and the government is directed to give the information requested in these items to Kapatos.

The remaining Kapatos items ask either for the theory of the government's case or the details of its proof. Such is not the purpose of a bill of particulars. United States v. Lebron, 222 F.2d 531, 535–536 (2d Cir. 1955), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); United States v. Verra, 203 F.Supp. 87, 92 (S.D.N.Y. 1962). United States v. General Electric Co., 40 F.Supp. 627 (S.D.N.Y.1941); United States v. Wexler, 6 F.Supp. 258 (S.D.N.Y.1933), aff'd 79 F.2d 526 (2d Cir. 1935), cert. denied, 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991 (1936).

The court notes that the government consents to item No. 50 of the Kapatos motion which apparently relates to count 4 rather than count 5 as set forth in the motion, since item 52 is identical and covers count 5.

The government consents to four items (Nos. 1, 3, 11, and 27) in Callahan's requested bill of particulars. In addition, there are fifteen items in the Kapatos motion, Nos. 29, 44, 66, 35, 37, 50, 52, 59, 66, 40, 64, 69, 42, 57, and 70, which the government consents to give Kapatos but has refused to give Callahan by its denial

---

2. "9) Identify by license plate, make and physical description, the panel truck named in paragraph (3) of Count First.
  (a) State who the owner of record of the said panel truck was.
  (b) State the terms and conditions of a contract, if any existed, which permitted utilization of said truck by the First National Bank of Passaic County.
"17) The year, model, color and registration number of the Mercury Station Wagon defendant Kapatos is alleged to have driven from the Southern District of New York to the District of New Jersey.
"18) State the date and place from which said Mercury Station Wagon is alleged to have been stolen.
  (a) State the date and place, if any, where said Mercury Station Wagon was recovered."

of Callahan's requests numbered 17, 30, 15, and 20. The government is directed to furnish Callahan with this information. Callahan's request No. 21 is the same as his request No. 20 and is likewise granted. Callahan's requests Nos. 13 and 14 are granted in part, i. e., the government will be required to state whether the rectory mentioned in overt act 6 is the same as that mentioned in overt act 7 and whether the rectory mentioned in overt act 8 is the same as that mentioned in overt act 6 and, if not, the specific locations of the rectories referred to in overt acts 6 and 8. Callahan's request No. 31 is denied, its subject matter being more proper for a suppression motion. His request No. 32 has already been disposed of by the government's consent to make the necessary administrative investigation into any wiretapping or electronic eavesdropping, discussed above. The requests for particulars in the remainder of Callahan's items are denied for the reasons stated in the denial of various items in Kapatos' bill.

For all of the foregoing reasons, the defendants motions are denied, except as otherwise stated herein.