STATE, Respondent v. ADKINS, Appellant

(225 N.W. 2d 598)

(File No. 11380. Opinion filed February 7, 1975)

David E. Morrill and Dale R. Hansen, Morrill & Hansen, Sturgis, for defendant and appellant.

Kermit Sande, Atty. Gen., and David O. Carter, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

DUNN, Chief Justice.

The defendant, Manford Gene Adkins, was convicted by a Meade County jury of two counts of kidnaping and two counts of murder on July 14, 1973. The defendant appeals contending (1) that the trial court erred in failing to suppress defendant's statements of March 10, 1973, and (2) that the trial court erred in not allowing the statement of Richard Elam (Exhibit J) to be read into evidence when Elam was not available to testify at the trial. We affirm.

On March 4, 1973, the Pennington County Sheriff's office determined that Billie Sue Allen and Valerie Janis were missing. On the following day the defendant, who had once been employed as a part-time police officer in Box Elder, South Dakota, reported the theft of his pistol and rifle to the sheriff's

office. On that same day the sheriff's office found the abandoned Volkswagon automobile belonging to Valerie Janis. On March 6, 1973, the defendant again appeared at the sheriff's office and subsequently reported that his pistol had been found and that there was blood and hair on the barrel. He also told the sheriff that he was "in trouble" because he had been the last person to see the girls. On March 7, 1973, the bodies of the two girls were found in a shed approximately seven miles north of New Underwood in Meade County, South Dakota. The Meade County Sheriff, who was now conducting the investigation, talked to defendant about taking a lie detector test in Sioux Falls. The defendant indicated a willingness to take the test, but upon his retaining Mr. William Rensch as his attorney, Mr. Rensch advised defendant not to take the test. On March 9, 1973, the sheriff, a deputy, defendant and Mr. Rensch viewed the bodies of the two dead girls at a Rapid City mortuary. In a telephone conversation later that evening Rensch advised the sheriff that the defendant would take the lie detector test but that he, Rensch, wished to know the time and place of the test. The sheriff testified that Rensch had advised that he did not wish to accompany the defendant to Sioux Falls, but he did confirm that Rensch wished to know the time and place of the test. The sheriff testified that he instructed his office to provide this information to Rensch, but this, through some mixup in communications, was never done. On the following morning (March 10th) the defendant voluntarily accompanied Deputy Sheriff Gray on the trip to Sioux Falls. It should be noted that the defendant was never in custody during any of this period; that he had complete access to his retained attorney at all times; that he had seen him the night before and could have contacted him at any time before 11 a.m. on March 10th when they left for Sioux Falls. Upon arriving in Sioux Falls and before the test was taken before Leo Brown, the polygraph examiner, the defendant was given the warnings set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, he was asked if he understood those rights and he replied that as a former law enforcement officer he knew his rights. He also signed a written consent form before taking the test. During the course of the test, defendant made a complete confession of the crimes to Mr. Brown, the examiner. At that point Deputy Sheriff Gray was called in and again the defendant was given the

Miranda warnings. Following this, the defendant also gave a tape recorded statement to Deputy Sheriff Gray. It is this oral statement to Brown and the tape recorded statement made to Gray that the defendant sought to suppress.

While defendant was not placed under arrest until after the statements were given, the circumstances surrounding the interrogation by a skilled polygraph examiner would not warrant an affirmance based on "volunteered statements," as outlined in Miranda, supra. Although this defendant seemed to be under a compulsion to divulge evidence about this case from the time the girls were found to be missing, he did not come to the sheriff's office in Rapid City or the interrogating room in Sioux Falls and announce that he wished to confess to the crime. This came only during the lie detector test and after being interrogated by the examiner.

We conclude that the defendant made these statements after a knowing, intelligent and voluntary waiver of his privilege against self-incrimination and right to counsel. Miranda established this standard for constitutionally valid waiver:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant *knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.*" (emphasis supplied) 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724.

Thus, the state must show that the waiver was voluntary, knowing and intelligent. Defendant concedes that he had been given the Miranda warnings in connection with this case prior to March 10th, immediately prior to the polygraph examination and again before giving his statement to Deputy Sheriff Gray. Defendant principally argues · that he could not have validly waived these rights because he was not *specifically* informed that he was entitled to the presence and advice of his retained counsel, Rensch, at the questioning in Sioux Falls. Defendant claims that the Miranda warnings, given in their usual form, did little more than confuse him absent a specific mention of Mr. Rensch.

The record strongly supports the trial court's ruling on the admissibility of defendant's statements. Defendant was not placed under arrest and had not been taken into official custody. He willingly chose to go to Sioux Falls after consultation with Mr. Rensch. He knew he could decline because he had in fact previously declined to make the trip. He was repeatedly given the Miranda warnings. Defendant possessed a high school equivalency certificate. He had been a part-time police officer for Box Elder, South Dakota, for some two years; during that time he had himself given the Miranda warnings. Prior to giving the statements in question defendant was asked if he understood the statement of his rights which he had just read; the polygraph examiner testified that defendant replied that as a former law enforcement officer, he knew his rights. It is undisputed that defendant was not intoxicated or drugged; that he was neither hampered in his movement nor promised anything or threatened with anything. The totality of circumstances in this case fully supports the trial court's ruling that defendant's inculpatory statements were admissible.*

---

\* A thorough discussion of the burden of proof of the state and the "totality of the circumstances" a court must assess in determining the voluntariness of a confession is found at pages 314 and 315 in State v. Cullison, 1972, Iowa, 215 N.W.2d 309:

"The question of the admissibility of inculpatory statements without counsel present places the burden on the State to show that the admissions were made after the defendant knowingly and intelligently waived his rights, but the State need prove the confession was voluntary only by a preponderance of evidence. Miranda v. State of Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; State v. Fetters, 202 N.W.2d 84, 88 (Iowa 1972); State v. Moon, 183 N.W.2d 644, 648 (Iowa 1971).

An excellent exposition on the question of voluntariness and the admissibility of inculpatory statements is set out in Schneckloth v. Bustamonte, *supra*, at page 225 of 412 U.S. [218], pp. 2045-2047 of 93 S.Ct. [2041, 36 L.Ed.2d 854], and is particularly applicable to the matter before us here. At page 2047 of 93 S.Ct., the court said:

' "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Culombe v. Connecticut, *supra*, 367 U.S. 568, at 602, 81 S.Ct. 1860, at 1879, 6 L.Ed.2d 1037.

"In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the in-

■ We find no case authority for the proposition that waiver is not effective absent a specific mention of known counsel. Rather, Miranda requires warning to the accused that he has the right to remain silent; that anything he does say may be used against him; that he has the right to counsel; and that, if indigent, counsel will be appointed for him. In our opinion, defendant urges an unwarranted expansion of Miranda. The record does not show that defendant was unaware of who his counsel was or that he was under the impression that he was not entitled to the presence of Mr. Rensch prior to making any statement. On the contrary, the record affirmatively supports the conclusion that defendant was fully aware of his rights and consciously waived them. It is also notable that defendant himself phoned Rensch at his home prior to leaving for Sioux Falls. It appears that defendant knew at that time that he was entitled to Rensch's presence if he so desired.

■ Keeping in mind that the court may look to the background, experience and conduct of the defendant in determining the validity of a waiver of constitutional rights, Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, we would hold that "a review of all the evidence in the record shows there was ample evidence to sustain the trial judge's finding that the confession was voluntary beyond a reasonable doubt." State v. Aschmeller, 1973, 87 S.D. 367, 209 N.W.2d 369.

terrogation. Some of the factors taken into account have included the youth of the accused, e. g., Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed.-224; his lack of education, e. g., Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; or his low-intelligence, e. g., Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; the lack of any advice to the accused of his constitutional rights, e. g., Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; the length of detention, e. g., Chambers v. Florida, supra, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; the repeated and prolonged nature of the questioning, e. g., Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; and the use of physical punishment such as the deprivation of food or sleep, e. g., Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. Culombe v. Connecticut, supra, 367 U.S., at 603, 81 S.Ct., at 1879.

"The significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. See Miranda v. Arizona, 384 U.S. 436, 508, 86 S.Ct. 1602, 1645, 16 L.Ed.2d 694 * * *, ".

■ Defendant also apparently argues for the adoption of a per se rule requiring the court to hold that the absence of known counsel at an interrogation vitiates an otherwise valid waiver of constitutional rights by the accused. United States v. Durham, 1973, 7 Cir., 475 F.2d 208, dealt thusly with an almost identical question:

> "[T]his case is governed by a plethora of decisions which have admitted confessions made under similar circumstances. These decisions have concentrated on the issue of whether the defendant's waiver was voluntary and knowing, and all have admitted confessions made without notice to counsel because the defendant was notified of his rights and deliberately waived them. These cases plainly indicate that it makes no difference whether the police or the defendant initiate the interviews, or how often or long the defendant is questioned, for the main concern is the validity of his waiver."

While Durham is authority for the proposition that known counsel need not be notified of the questioning in order to uphold a valid waiver, the present case may be further supported by the fact that retained counsel here had previously approved of the suggested polygraph examination. In Durham counsel was not aware that the challenged questioning would take place. In contrast, Rensch only lacked knowledge of the details.

■ An accused may voluntarily, knowingly and intelligently waive his right to counsel altogether. Logical extension of the principle permits that same accused to voluntarily, knowingly and intelligently waive his right to the presence and assistance of previously retained or appointed counsel at an interrogation, Moore v. Wolff, 1974, 8 Cir., 495 F.2d 35; Dillon v. United States, 1968, 10 Cir., 391 F.2d 433. The question of surreptitious police tactics aside, we see no reason why an innocent failure to satisfy counsel's request for time and place information should invalidate deliberate and understanding waiver.

We do not decide whether deliberate failure to comply with a request by counsel for information respecting time and place of future questioning would produce a different result. Considering

all of the evidence on this question, and some of it was conflicting, there is no indication that the failure to inform counsel of the time and place of the test was anything more than an administrative oversight. Further, it should be remembered that on the morning of March 10, 1973, the defendant was not in custody, and up until the time he left for Sioux Falls about 11 a.m. he was completely free to contact his retained attorney or anyone else that he chose to counsel with. We simply hold that where there is no evidence that the failure to comply with counsel's request for information as to the time and place of questioning was anything more than inadvertent, the absence of known counsel does not make a constitutionally valid waiver impossible. Where a capable defendant deliberately and understandingly chose to forego the assistance of counsel at such interrogation, the waiver will be upheld. United States v. Springer, 1972, 7 Cir., 460 F.2d 1344, cert. den., 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125; United States v. Crisp, 1970, 7 Cir., 435 F.2d 354, cert. den., 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116; Wilson v. United States, 1968, 5 Cir., 398 F.2d 331, cert. den., 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712.

The second question raised is whether the court erred in disallowing the unsworn statement of Richard Elam (Exhibit J) to be placed in evidence. This statement would have shown an argument between another man and one of the victims on the day of the murders. The statement would have been hearsay and if admitted in evidence would have denied the state the right to cross-examine this witness. Defendant argues that it should have been admitted because he had relied on the state's attorney's statement that all of the witnesses endorsed on the information would be available at the time of trial. Elam was on assignment in Guam at trial time and would not have returned until July 23, 1973. If the statement of the state's attorney resulted in surprise that Elam was not present, the remedy was a request for continuance, which was not made by the defense. See State v. Hemmenway, 80 S.D. 153, 120 N.W.2d 561. We find no error in disallowing the statement.

Affirmed.

All the Justices concur.