STATE of South Dakota, Plaintiff
and Appellee,

v.

Timothy Sean CAFFREY, Defendant
and Appellant.

No. 13633.

Supreme Court of South Dakota.

Argued Sept. 9, 1982.

Decided April 6, 1983.

Richard H. Wendt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Stanley E. Whiting of Day, Grossenburg & Whiting, Winner, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment of conviction for first degree murder. We reverse and remand.

On the evening of January 24, 1981, William Caffrey was shot to death in his home in Martin, South Dakota. His adopted Indian son, the appellant, Timothy Caffrey, who was then seventeen years old, was taken into custody by the sheriff's department a few hours after the incident. During an interrogation that ran from 12:20 a.m. to 2:58 a.m. on January 25, 1981, appellant ultimately confessed that he had argued with and later shot his father.

Following a hearing, appellant was transferred to adult court, where a jury returned a verdict of guilty to murder in the first degree. Appellant was sentenced to life in the penitentiary.

Appellant contends that the trial court erred in transferring him from juvenile court to adult court. The trial court considered the factors set out in SDCL 26–11–4 for determining whether a juvenile shall be transferred to adult court.[1] In its transfer order, entered following the hearing on the transfer motion, the trial court set forth the reasons for its decision with sufficient specificity to permit meaningful review, *see People in Interest of D.M.L.,* 254 N.W.2d 457 (S.D.1977); *People in Interest of L.V.A.,* 248 N.W.2d 864 (S.D.1976), by way of findings of fact as required by SDCL 26–11–4. Without detailing the evidence presented at the transfer hearing, our review of the record satisfies us that the trial court's findings in support of its decision to transfer are not clearly erroneous, which is the standard by which such findings are to be reviewed on appeal. SDCL 26–11–4. In reaching this conclusion, we note that appellant, who was born on May 28, 1963, was less than two months short of his eighteenth birthday on the date of the transfer hearing.

1. SDCL 26–11–4 provides in part:

The following factors may be considered by the court in determining whether a child should be transferred:

(1) The seriousness of the alleged offense to the community and whether protection of the community requires waiver;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) Whether the alleged offense was against persons or property with greater weight being given to offenses against persons;

(4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit;

(5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults;

(6) The record and previous history of the juvenile;

(7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

.     .     .     .     .

Appellant next contends that the trial court erred in failing to suppress his written confession inasmuch as it was not voluntarily given.[2]

In determining whether a defendant made a voluntary waiver of his constitutional right against self-incrimination, we are guided by the following principles:

> In making the determination with respect to whether there was a voluntary waiver on the part of the defendant, the totality of the circumstances surrounding the interrogation are inquired into. *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). That decision must be made by the trial judge in the first instance. *State v. Stumes* [90 S.D. 382], 241 N.W.2d 587 (S.D.1976); *State v. Adkins,* 88 S.D. 571, 225 N.W.2d 598 (1975). If the trial court finds the confession was voluntary beyond a reasonable doubt, such a finding is binding upon this court, unless it is clearly erroneous. *State v. Lyons,* 269 N.W.2d 124 (S.D.1978); *State v. Lewis* [90 S.D. 615], 244 N.W.2d 307 (S.D.1976); *State v. Stumes,* supra; *State v. Aschmeller,* 87 S.D. 367, 209 N.W.2d 369 (1973); *State v. Kiehn,* 86 S.D. 549, 199 N.W.2d 594 (1972); *State v. Thundershield,* 83 S.D. 414, 160 N.W.2d 408 (1968).

*State v. Cowell,* 288 N.W.2d 322, 324 (S.D. 1980).

The interrogation was conducted in a back room in the sheriff's office in Martin, South Dakota, by the Bennett County Sheriff and two deputies. Appellant's mother was in Ipswich, South Dakota at the time of the interrogation, and neither she nor any other family member or adult was called by the officers to be with appellant during the interrogation. The officers did contact a court services officer, who advised them to keep appellant in custody for observation.[3]

At the beginning of the interrogation, appellant was read his *Miranda* rights and then signed a written waiver of these rights. There is no claim or evidence of any physical coercion during the interrogation. Although the State contends that no threats or promises were made during the interrogation, the interrogation transcript discloses that the interrogating officers made the following statements:

> Deputy: Well Tim, we'd like to have you now, tell us now what happened to your dad, we're sure that you, you know something more than you're telling us, right now nobody's been accused of anything or nothing, and if you did get in a fight and you did hit him with your numb-chucks or whatever you hit him with. *If you tell us now, we can help you.* But as soon as we start these other people there's going to be a lot of people talk to you and *they are going to run lie detector test [sic] on you, polygraph examination.* There's going to be a lot of other people and I'm sure your mom's going to talk to you and that's going to be the hardest of all. (Emphasis added)

> . . . . .

> Sheriff: Have you ever taken a lie detector test or been around anybody's that taken one Tim?
>
> Appellant: Huh-uh
>
> Sheriff: You know what they are?
>
> Appellant: Ya
>
> Sheriff: You know how they operate?
>
> Appellant: Ya
>
> Sheriff: Do you think you could take one of them. Advise that machine your telling the truth?
>
> Appellant: Ya
>
> Sheriff: Think you could do her, huh?
>
> Appellant: Huh-uh
>
> Sheriff: You know what happens when you tell lies on that thing?

**2.** Although the trial court did not enter findings of fact and conclusions of law following its review of the recorded interrogation, this issue was addressed in the trial court's memorandum opinion. *See State v. Thomale,* 317 N.W.2d 147 (S.D.1982); *State v. Lewis,* 90 S.D. 615, 244 N.W.2d 307 (1976).

**3.** Appellant does not contend that the failure of the officers to notify appellant's mother that he had been taken into custody as required by SDCL 26–8–19.2 vitiates his confession. *Cf. Matter of V.R.,* 267 N.W.2d 832 (S.D.1978) (Porter, J., dissenting).

Appellant: They charge in different kinds of waves on the mind on that (unreadable)

.    .    .    .    .

Sheriff: *That's right.* (Emphasis added)

Deputy: *Big ones* (Emphasis added)

Sheriff: Do you still think that you could pass that test?

Appellant: Yep

Sheriff: I don't think you can.

.    .    .    .    .

Deputy: ... I don't exactly how [sic] your father passed away. If he was beat over the head or if he was shot boy your in a lot of trouble. [sic]

Deputy: But if it was an accident and you tell us now and you got in a fight and ya hit him with your numb-chucks or something.

.    .    .    .    .

Deputy: You realize Tim that we're going to have to keep coming back and back and back and back, to you all the time.

None of those present at the interrogation informed appellant that he could not be compelled to take a lie detector test, even though all three officers knew that he could not be required to do so.

The trial court concluded that prior to the confession no questioning pressure was used on and no promises of any consequence were made to appellant. We disagree.

■ The youth of an accused is a significant factor in determining the voluntariness of a confession. *See Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). A juvenile's constitutional right against self-incrimination should be afforded additional protection. *State v. Lohnes,* 324 N.W.2d 409 (S.D. 1982).[4] If counsel is not present when an admission is obtained, a court must take

great care to assure that the juvenile's confession was voluntary "in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair." *Re Gault,* 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527, 561 (1967).

■ A totality-of-circumstances analysis when applied to juveniles involves evaluation of the juvenile's age, experience, education, background, intelligence, and capacity to understand the warnings given him, the nature of Fifth Amendment rights, and the consequences of waiving such rights. *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

■ Although appellant was nearly eighteen years old at the time the crime was committed and had been proceeded against in juvenile court on one prior occasion, the record made at the suppression hearing does not indicate that appellant had had the extensive contacts with law enforcement officers, probation officers, and the courts that marked the juvenile in *Fare v. Michael C., supra.*

■ Added to the factors of appellant's immaturity and inexperience is the seriousness of the misrepresentation by the interrogating officers that they could help appellant if he told them what had happened and that he would be forced to take a lie detector test. Deception is a factor to be considered in evaluating the totality of the circumstances. *See Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Contrary to the State's position, the interrogation transcript clearly shows that appellant was told that "they are going to run [a] lie detector test on you," rather than that he would be asked to take a lie detector test. Moreover, not only did the inter-

4. In *Lohnes* we held that before a trial court can conclude that a juvenile has made a clear and intelligent waiver of his rights to counsel and against self-incrimination, the State must establish that the juvenile was advised of the possibility that he may be tried as an adult. In this case, we have determined that the confession was not voluntary after considering the totality of the circumstances surrounding the interrogation, and we decline to determine whether the *Lohnes* rule applies to cases such as this which were pending on appeal at the time of the announcement of the rule.

rogating officers deliberately mislead appellant into thinking that he would be compelled to submit to a lie detector test, they reinforced and exaggerated his misconceptions of the nature of such a test by leading him to believe that the waves that he thought would be "charged in" would be "big ones."

This court commented on the psychological impact of a lie detector test in a case where the defendant, who had taken the test, confessed after being told that he had not passed the test. In *State v. Faller,* 88 S.D. 685, 688, 227 N.W.2d 433, 435 (1975), we stated:

> The situation a lie detector presents can best be described as a psychological rubber hose. A defendant, when suddenly faced with the impersonal accuracy of a machine, may believe it is safer to confess and place himself at the mercy of the law rather than lie to the examiner and sacrifice any possibility of leniency. Under circumstances such as this we find it difficult to believe that a confession is voluntary unless it can be shown the defendant knows his constitutional rights and knows that his interests cannot be harmed by exercising those rights.

In *State v. DuBois,* 286 N.W.2d 801 (S.D. 1979), we held voluntary certain inculpatory statements made after a polygraph examination. In doing so, however, we pointed out that the defendant had twice been advised prior to the test that he did not have to take the test if he chose not to.

Likewise, in *State v. Adkins,* 88 S.D. 571, 225 N.W.2d 598 (1975), we held to be voluntary certain inculpatory statements made during and subsequent to a lie detector test, after noting that the defendant had signed a consent form prior to taking the test and that his counsel had previously approved the suggestion that the defendant take the test.

In *Sparks v. State,* 248 Ind. 429, 229 N.E.2d 642 (Ind.1967), the Supreme Court of Indiana held involuntary a confession that was obtained from an inexperienced 17-year old boy on the basis of the result of a lie detector test that the youth did not know he could not be required to take:

> Appellant testified that he did not know that he could not be required to take the lie detector test, and not having been so informed, reference to the purported results of that test in inducing appellant to make the third confession, constituted an undue exercise of influence, as well as a denial of his constitutional rights in obtaining such confession.

229 N.E.2d at 647.

In *United States v. Little Bear,* 583 F.2d 411, 414 (8th Cir.1978), the Court of Appeals for the Eighth Circuit had before it a challenge to the voluntariness of a confession given shortly after a polygraph examination had begun. In discussing the defendant's contention that her confession was involuntary because she was nervous and scared during the polygraph examination, the court wrote:

> In light of the unsettling circumstances and the psychological pressure inherent in a polygraph situation, it should not be surprising that an unsophisticated Indian woman, such as Ms. Little Bear, would be upset and nervous when confronted by the lie detector apparatus. In addition, the record does not indicate the FBI agents advised Ms. Little Bear that she could refuse to take the polygraph test, discontinue it at any point, or decline to answer any question.

583 F.2d at 413. The court went on to hold that under the preponderance of the evidence test applied in the federal courts the defendant's confession had been voluntarily given, citing the fact that the defendant had understandingly signed a waiver of her Miranda rights and a consent to take the polygraph examination. The court felt constrained, however, to add the following cautionary advice to law enforcement officials:

> Although we are satisfied with the district court's decision in the circumstances of this case, we must add a caveat concerning police questioning in a polygraph situation. Owing to the often coercive impact of a lie detector test, full instructions of the suspect's rights should be furnished whenever such examinations

are administered to persons under criminal investigation.... As part of the effort to remove or mitigate the pressures toward self-incrimination generated by a polygraph situation, we deem it essential that a person subject to a polygraph examination be apprised, at a minimum, of the rights to refuse to take the test, to discontinue it at any point, and to decline to answer any individual questions.

583 F.2d at 414.

In view of our decisions in *Faller, supra, DuBois, supra,* and *Adkins, supra,* we join in the foregoing language from the *Little Bear* case.

The psychological impact of the prospect of being required to submit to an involuntary polygraph examination, especially upon one as youthful and unsophisticated as appellant, although arguably not as great as that of a polygraph examination already completed, is of sufficient force to render inherently suspect any confession that follows, as did appellant's, the advice of the interrogating officers that such test would be forthcoming. Accordingly, we hold that given the totality of the circumstances, including appellant's youth, his relative inexperience with police procedures, his lack of friend or family beside him, the lateness of the hour, the lengthy duration of the questioning, and the officers' representations that they would persist in the interrogation ("We're going to have to keep coming back and back and back and back to you all the time."), made the officers' bald, knowingly misleading statements that appellant would be involuntarily subjected to a lie detector test and their exaggeration of appellant's misconceptions of the nature of such a test so inherently coercive that we cannot hold that appellant's confession was beyond a reasonable doubt voluntarily given. Therefore, evidence of any confessions or admissions obtained during or subsequent to the interrogation will not be admissible against appellant upon retrial.[5]

Appellant also contends that the introduction of a pistol and other articles seized as a result of a warrantless search of William Caffrey's automobile violated appellant's fourth amendment rights. The State contends that appellant lacks standing to raise this issue. We agree. The test for standing is whether the defendant had a legitimate expectation of privacy in the searched area. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *State v. Thomale,* 317 N.W.2d 147 (S.D.1982). It is the defendant who has the burden of proving a legitimate expectation of privacy in the searched area. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

Appellant does not claim that he rather than his father owned the car. Also, this does not appear to be a case in which the defendant had permission to use the car at the time of the search. *See, e.g., United States v. Portillo,* 633 F.2d 1313 (9th Cir. 1980), *cert. denied* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981). In fact, the evidence discloses that appellant's use of the car had been a subject of contention between appellant and his father on the night of the killing. We therefore conclude that appellant has not met his burden in proving a legitimate expectation of privacy in his father's automobile and thus will not be heard to contend that his fourth amendment rights were violated.

Our disposition makes it unnecessary to address other errors appellant contends were committed at trial. We assume, of course, that upon retrial the prosecutor will refrain from making the type of statements in the presence of the jury that led appellant to allege in the instant appeal that the prosecutor had impermissibly commented upon appellant's failure to testify.

---

5. The trial court listened to the tape recording of the interrogation, as have we. Although the interrogation lasted for approximately two hours and thirty-eight minutes, the tape recording runs for only approximately one hour and forty-seven minutes. One of the officers testi-

fied that the recorder was turned off while appellant was writing out a statement in which he claimed that he had shot his father accidentally during a post-marijuana-smoking hallucinatory episode, thinking that his father was the devil.

The judgment of conviction is reversed and the case is remanded with directions that the trial court enter an order barring the use at retrial of any confessions and admissions obtained from appellant.

MORGAN and HENDERSON, JJ., concur.

FOSHEIM, C.J., and DUNN, J., concur in result.

DUNN, Justice (concurring in result).

On the basis of the record before the court, I would not reverse the trial court's finding that defendant's confession was voluntary.

I am, however, compelled to join in the result reached herein but for a different reason. I believe the comments made by the prosecuting attorney in his opening summation were grounds for a mistrial. The prosecutor stated:

"... Now, ladies and gentlemen, this is State's Exhibit Eleven. You Folks haven't seen this yet, but you will have plenty of time to look at it and you haven't heard from Tim yet on his reaction to the events of January Twenty-fourth, ...."

The trial court denied appellant's motion for mistrial based on these statements.

The Fifth Amendment forbids comment by the prosecution on the accused's silence. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This court has concluded it is reversible error for a prosecutor to draw attention to an accused's failure to testify during his criminal trial. *State v. Winckler,* 260 N.W.2d 356 (S.D. 1977). Aside from direct comments on this failure to testify, indirect allusions designed to accomplish that end have also been prohibited by this court. *State v. Wilson,* 297 N.W.2d 477 (S.D.1980). I believe the comments made by the prosecution in this case impermissibly drew the jury's attention to appellant's silence during these criminal proceedings. In my mind, that is grounds for mistrial and I would reverse this case for retrial on that basis.

I am authorized to state that Chief Justice FOSHEIM joins in this concurrence in result.