STATE, Respondent v. WADE, Appellant

(159 N.W.2d 396)

(File No. 10403. Opinion filed June 12, 1968)

338

**William F. Brady,** Rapid City, on the brief, **William M. Rensch,** Rapid City, for defendant and appellant.

**Frank L. Farrar,** Atty Gen., **Michael Strain,** Asst. Atty. Gen., Pierre, **R. James Brennan,** State's Atty., Rapid City, for plaintiff and respondent.

HANSON, Presiding Judge.

Defendant, Sylvester Wade, was charged with and found guilty by a jury of the crime of second degree manslaughter, alleged to have been committed on the 27th day of May, 1966 in Pennington County while operating a motor vehicle in a negligent manner under the influence of intoxicating liquor. He appeals.

Contrary to defendant's assertion the evidence amply sustains the verdict. In summary it appears the decedent, John Ripple, was an airman stationed at Ellsworth Airbase near Rapid City. Sometime after 8:30 in the evening of May 27, 1966 he was walking along the approach road to the Airbase.

Shortly after 9:00 a young couple, Terry Updegrove and Deanene Greer, left Rapid City. As they proceeded east on Highway 14-16 on their way to the Airbase a car approached from the rear swerving from one side of the road to the other. The car passed at a high rate of speed and was observed to be a 1962 or 1963 Chevy II black station wagon driven by a man. It turned off on the approach road to the Airbase and continued to be driven in a swerving and reckless manner. The headlights of the station wagon flashed on something and the young couple thought a pedestrian had been hit. They stopped and looked, but found nothing. About a half hour later they reported to the airman on

duty at the Airbase gate they had seen a black '62 to '64 Chevy II station wagon swerving down the road at a fast rate of speed and thought it was a drunk driver. Airman Second Class John Ripple's body was discovered about 5:00 a.m. the next morning lying in the ditch in the same area the young couple had searched the previous evening. An autopsy revealed multiple severe injuries.

Defendant had been drinking on the day of the crime. There is evidence he arrived at the trailer court where he lived in an intoxicated condition about 9:00 in the evening. He drove in a reckless manner and had difficulty getting his car into the driveway. An argument with his wife followed. Among other things defendant said he had a bottle of booze. His wife replied "She was sick and tired of this and she was going in and she was going to get the baseball bat". Defendant left the trailer court in his 1963 Chevy II black station wagon about 9:15 or 9:20. He was driving fast and recklessly. The trailer court is located off Highway 16 near the Airbase. Neighbors observed defendant's return to the trailer court in about half an hour. His car was parked near his trailer court lot.

In response to a neighbor's complaint the town marshal and his deputy stopped at defendant's trailer about 10 o'clock in the evening and obtained the keys to defendant's car so it would not be driven again that night. Defendant apparently was in bed and the keys were obtained from his wife. In checking the car to see if the key was in the ignition switch the officers observed no damage to the car.

About 7 o'clock in the morning of May 28th defendant's wife called the sheriff about the condition of their car. Investigation showed considerable damage to the right-hand side. The windshield was broken, the right headlight was cracked, the antenna was broken, and there was a heavy mark on the right front fender. According to laboratory agents of the FBI, hairs taken from the windshield and dash of defendant's car possessed the same microscopic characteristics as decedent's hair; textile fibers found on the leading edge of the fender matched

fibers in decedent's jacket; particles of glass found on decedent's clothing had the same optical and physical characteristics as the broken windshield; and paint smears on decedent's clothing were the same color and composition as the top layer of paint on the fender of defendant's station wagon.

■ The verdict of the jury was based on competent evidence amply sufficient to warrant conviction of the crime of second degree manslaughter. Although circumstantial in nature the facts and circumstances are consistent with each other and with defendant's guilt, and could not by any reasonable theory be true and defendant be innocent. State v. Thomas, 78 S.D. 568, 105 N.W.2d 549; State v. Rasch, 70 S.D. 517, 19 N.W.2d 339. The minor conflicts and inconsistencies in the testimony of the various witnesses were resolved by the jury.

On defendant's motion before trial the court entered its order requiring the State, by and through the States Attorney's office of Pennington County, to produce for defendant's inspection or copying:

1. All maps, plats and drawings relative in any way to this action in the possession of the States Attorney, Sheriff, Deputy Sheriff, South Dakota Motor Patrol, or any other witness known to the States Attorney's office.

2. All photographs taken at the scene of the alleged incident; of the deceased; of the automobile alleged to have been involved in the death of deceased; of the trailer court in which defendant lives, and any other photographs taken in connection with the investigation or preparation of this action by the States Attorney's office whether taken by an investigating officer or the States Attorney's office.

3. All notebooks, typewritten notes or other memoranda of any and all investigating officers who investigated the circumstances regarding this cause of action, which notebooks, typewritten notes or other memoranda relate to any conversations with any witnesses interrogated in regard to this alleged offense

or of any facts or measurements or exhibits relating to this offense known to the States Attorney's office or can be discovered.

4. All handwritten or typewritten statements, whether signed or unsigned, of any and all witnesses interrogated by any investigating officer relating to the offense.

5. The names and addresses so far as known to the States Attorney's office or of all persons interviewed by the investigating officers relative to this offense whether such persons are designated or determined to be witnesses by the States Attorney's office or not.

6. A list and description of each and every item sent to the Federal Bureau of Investigation or any other place for testing or examination relating in any way to the alleged offense, whether said items are material or not to the trial of this action and whether they are to be introduced as an exhibit or not.

7. All reports received from any person or organization relating to the examination or testing of any evidence or exhibits or items forwarded in relation to the alleged commission of this offense, and

8. The names and addresses as far as known of all witnesses whom the State expects to call personally as witnesses on the trial and of all witnesses whom the State does not expect to call personally as witnesses on the trial.

⸱ As a person accused of crime in this state is not, as a matter of right, entitled to inspection or disclosure of any evidence in the possession of the prosecution the discovery order in this case was liberal in the extreme. As a practical matter it opened the States Attorney's file for inspection without regard to materiality or relevancy. It gave defendant access to the State's "work product", the names and statements of all persons interviewed, names of all witnesses, photographs, reports and memoranda. As such, it far exceeded discovery and inspection allowable under Rule 16 of the Federal Rules of Criminal Pro-

cedure. See Annot., 5 A.L.R.3d 819, Discovery and Inspection of Prosecution Evidence Under Federal Rule 16 of Criminal Procedure.

Despite the liberality of the discovery and inspection allowed defendant contends the court erred in denying his further request that the State be required to "provide the defendant with information and explanation in detail of any evidence or information, items or exhibits, tests or examinations relating in any way to this offense of an exculpatory nature, both as to commission of the offense, or any part thereof, or bearing upon the defendant's innocence, guilt or character, or of an impeaching nature."

In furtherance of justice a trial court has inherent power on behalf of an accused in a criminal proceeding to compel production and to permit inspection of evidence in the possession or under the control of the States Attorney. State ex rel. Wagner v. Circuit Court of Minnehaha County, 60 S.D. 115, 244 N.W. 100. An accused's application for inspection or disclosure is a matter addressed to the sound discretion of the trial court which may be granted as an aid to the ascertainment of the truth or as a matter of fundamental fairness. A general hunting or fishing license should ordinarily not be granted and the time, place, and manner of making the inspection permitted or discovery allowed should be specified. It should ordinarily be confined to relevant, tangible or written evidential matters and should be denied whenever (1) there is danger or likelihood of witnesses being coerced, intimidated, or bribed; (2) the State may be unduly hampered in its investigation, preparation, and trial of defendant's case or of other related criminal cases; or (3) other evil or danger to the public interest may result from inspection or disclosure.

There was no abuse of discretion in the present action. Full and complete discovery was permitted and complied with. No exculpatory evidential matter of any kind was withheld or suppressed by the State according to defendant counsel's own admission. Therefore, his citation of authority in this respect is

not pertinent and merits no discussion. His complaint relates to the State's failure to fully inform him about a long distance telephone call made by a Mrs. Hayes from the residence of the witness, Joyce Tomaka, on the night of the crime. The record shows, however, the State furnished him with a copy of the telephone company's slip on this call and defendant questioned Mrs. Tomaka on cross-examination about it. In doing so defendant's pretrial knowledge of the call was conclusively shown.

■ A neighbor, Mrs. Joyce Tomaka, testified defendant was intoxicated when she saw him about 9:00 o'clock in the evening of May 27, 1966. Before expressing this opinion she was allowed foundationally to testify, over objection, she had observed defendant intoxicated on a prior occasion. This was not a proper or necessary foundation question. "A witness who has had an opportunity to observe the facts may state whether a person was intoxicated at a particular time". State v. Carlson, 75 S.D. 84, 59 N.W.2d 554; Palmer v. Schurz, 22 S.D. 283, 117 N.W. 150. Although this testimony was improper it can only be categorized as harmless error. RCP 61. Furthermore, mere evidence of defendant's prior intoxication is not proof of the commission of the unrelated crime of public intoxication.

■ We further find no abuse of discretion in allowing Dr. Harold Frost, a pathologist who performed an autopsy on the body of decedent to answer a hypothetical question as to the cause of injuries. The question was properly framed, responsive to the issues, and assumed facts supported by evidence in the record. Its manner, form, and content complied in all particulars to the governing rules relating to hypothetical questions set forth in Dean v. Seeman, 42 S.D. 577, 176 N.W. 649; Erickson v. Webber, 58 S.D. 446, 237 N.W. 558, 80 A.L.R. 914; and Piper v. Barber Transportation Co., 79 S.D. 353, 112 N.W.2d 329.

Affirmed.

All the Judges concur.

LUND, Circuit Judge, sitting for RENTTO, J., not participating.