**STATE of South Dakota, Plaintiff and Respondent,**

v.

**James COWELL, Defendant and Appellant.**

No. 12564.

Supreme Court of South Dakota.

Argued Nov. 16, 1979.

Decided Feb. 13, 1980.

Dakota Division of Criminal Investigation interviewed the defendant at the Woodbury County, Iowa, jail where the defendant was being held on an unrelated offense. The defendant had not then been charged with the murder of James Clark. The defendant was given his *Miranda* rights prior to the interview, whereupon he stated "he had nothing to hide" and then talked to Agent Gromer. During the first portion of the interview, the defendant responded to Agent Gromer's inquiries about James Clark with questions couched in Biblical passages. Agent Gromer traded Biblical quotations with the defendant for twenty to thirty minutes, and then brought the conversation back to the disappearance of Clark, whereupon defendant made incriminating statements. During this interview (which continued for approximately ninety minutes), the defendant appeared alert, well-rested, and coherent. He did not give any indication of being under the influence of drugs or alcohol and seemed to understand Agent Gromer's questions. That also appeared to be the condition of the defendant when he was questioned a second time on October 3, 1977. Again the *Miranda* rights were fully explained and the defendant indicated a willingness to talk to Agent Gromer and another detective. At the beginning of the October 3 meeting, there was some conversation regarding the Bible between the defendant and Agent Gromer, but on this occasion no Biblical passages were recited. The defendant thereafter made additional incriminating statements.

The basic issue before us is whether the defendant knowingly, voluntarily and intelligently waived his rights under the Fifth Amendment to the United States Constitution and Article VI, Section 9, of the South Dakota Constitution before making incriminating statements during the two interviews. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is the position of defendant that the admissions made by him during the two custodial interviews were involuntary because Agent Gromer indulged in "Scriptural" subterfuge to overcome his cryptic "Scriptural" refusal

Michael V. Black, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

L. Anthony Weisensee, John N. Gridley, III, Sioux Falls, for defendant and appellant.

FOSHEIM, Justice.

The defendant brings this appeal from a judgment of conviction on a charge of murder. We affirm.

On August 8, 1977, the defendant shot and killed James Clark and then forced two other men to help him dispose of the body. On September 15, 1977, Agents Donald Gromer and Jerry Baum from the South

to waive his right to remain silent. It is claimed that psychological pressures thus brought to bear on the accused resulted in his incriminating statements. The State maintains that the findings and conclusions adopted by the trial judge that the defendant voluntarily waived his privilege against self-incrimination were sustained by the evidence adduced at the hearing on defendant's motion to suppress.

■ The religious aspects became apparent when the defendant was asked if he wanted a lawyer (although the right to counsel is not in question here). His response was that he was represented by "God The Father In Heaven." When Agent Gromer would ask a question about the disappearance of Clark, the defendant often countered with Biblical passages or religious beliefs. He contends that this was his method of indicating he did not want to talk about Clark's disappearance and that Agent Gromer would then overcome that reluctance by showing him Biblically that he should cooperate with government authorities. The issue, therefore, devolves upon whether the Scriptural sparring led to involuntary incriminating statements. At the suppression hearing, Agent Gromer testified concerning the September 15, 1977, interview:

Q: When did you give him his rights, when you first went into the cell?

A: Immediately after I and Agent Baum identified ourselves.

Q: Did he say that he would talk to you after you gave him his rights?

A: Yes, he did. He said he had nothing to hide.

The testimony continued:

Q: How would you characterize the tenor of this Biblical discussion?

A: Well, it was a willing exchange of information on both sides. It was a Biblical conversation.

Q: Did he ever, during the Biblical portion of the conversation, say he would not tell you anything?

A: No, he did not.

Q: And did there ever come a point in time where you had to prod him with Biblical passages?

A: No.

Concerning the October 3, 1977, interview, Agent Gromer further testified:

Q: And for the record, could you relate which rights you advised him of?

A: I told Mr. Cowell that he had the right to remain silent. Anything he said could and would be used against him in a criminal court of law. I told Mr. Cowell that he had the right to an attorney, and if he could not afford an attorney of his own choosing, one would be appointed for him by Union County at no expense to him. I asked if he understood those rights and he said he did. I again told Mr. Cowell that he had the right to cease talking to us at any time he so desired and acquire an attorney. He told me that he had nothing to hide and he would be willing to visit with us.

Q: And during the course of that interview, did Mr. Cowell ever indicate to you in any manner that he desired the conversation to cease?

A: No, he did not.

Q: Did he ever ask for a lawyer?

A: No, he did not.

In making the determination with respect to whether there was a voluntary waiver on the part of the defendant, the totality of the circumstances surrounding the interrogation are inquired into. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). That decision must be made by the trial judge in the first instance. *State v. Stumes*, 241 N.W.2d 587 (S.D.1976); *State v. Adkins*, 88 S.D. 571, 225 N.W.2d 598 (1975). If the trial court finds the confession was voluntary beyond a reasonable doubt, such a finding is binding upon this court, unless it is clearly erroneous. *State v. Lyons*, 269 N.W.2d 124 (S.D.1978); *State v. Lewis*, 244 N.W.2d 307 (S.D.1976); *State v. Stumes*, supra; *State v. Aschmeller*, 87 S.D. 367, 209 N.W.2d 369 (1973); *State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972); *State v. Thundershield*, 83 S.D. 414,

160 N.W.2d 408 (1968). We have adopted the position that, as with other decisions of a trial court, we must consider the evidence in the light most favorable to support it. *State v. Thundershield*, supra; *State v. Kiehn*, supra.

We are unable to equate the facts in this case with the "Christian burial speech" condemned in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), as defendant urges. *Williams* concerned the waiver of the Sixth Amendment right to counsel, rather than the waiver of the Fifth Amendment right to remain silent. In *Williams*, the defendant was known by the police to be a young man with extreme religious convictions and a history of mental illness. He had been arrested in Davenport, Iowa, on suspicion of abducting and murdering a ten-year-old girl. He was driven to Des Moines, Iowa, in the custody of two police officers who initiated a wide-ranging discussion of many topics, including religion, notwithstanding their knowledge that the defendant's lawyers had advised him not to talk to the police and contrary to an express agreement with one of the lawyers that defendant would not be questioned during the drive. One of the officers made a highly emotional appeal to Williams to show them the gravesite to permit the child's body to be returned to the parents for a Christian burial. The discussion which created intense psychological pressures upon the defendant in *Williams* cannot be equated with the colloquy in the present case between Agent Gromer and the defendant. We find it easier to identify the present circumstances with those in *United States v. Boyce*, 594 F.2d 1246 (9th Cir. 1979), an espionage case. In that case, the defendant initially refused to waive his right to remain silent after receiving his *Miranda* warnings. During a lengthy drive to the FBI office, the FBI agents nevertheless questioned him about various personal matters, appealed to his sense of loyalty to his country and his family, and invited him to consider whether it would be to his advantage to discuss whatever was on his mind. The defendant talked freely of matters not related directly to the charges against him, but upon reaching the FBI office, indicated he wished to remain silent. His request was honored and questioning was not resumed until he initiated a discussion by his inquiry concerning the arrest of others in the case. He was not again questioned until after he had been informed that an accomplice was under arrest. Boyce then volunteered the statement, "Let's talk." Based on that information, the United States Court of Appeals for the Ninth Circuit concluded the District Court did not err in finding that Boyce voluntarily and knowingly waived his right to silence. Similarly, in this case, we conclude that a fair reading of the whole record of the defendant's interrogation supports the trial court's finding that his incriminating statements were completely voluntary and we are unable to say that such decision was clearly erroneous.

We have reviewed the remaining assignments of error and find them to be without merit.

The judgment of conviction is affirmed.

All the Justices concur.