**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Terry Merle ERICKSON, Defendant and Appellant.**

**No. 18540.**

Supreme Court of South Dakota.

Argued Sept. 13, 1994.

Decided Dec. 21, 1994.

Mark Barnett, Atty. Gen., Todd A. Love, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Vance S. Myrabo, Canton, for defendant and appellant.

WUEST, Justice.

Terry Merle Erickson (Erickson) was convicted of having sexual contact with a child, a violation of SDCL 22–22–7. He was sentenced to eight years in the South Dakota State Penitentiary and ordered to pay all counseling costs for the victim. He appeals raising multiple issues. We reverse and remand for a new trial.

## FACTS

The alleged sexual contact in this case occurred on May 10, 1992. Victim was ten

years old at the time. Erickson was forty-five years old. On that date, according to the victim, victim, her mother, mother's live-in boyfriend (Erickson's brother), a friend of the family, and Erickson gathered together for a Mother's Day barbecue in mother's backyard. According to victim's testimony, Erickson, who was an overnight guest in the home, laid down on victim's bed to watch television with her and her younger sister. After the younger sister fell asleep, Erickson allegedly began to hug and kiss victim and reached under her nightgown penetrating her vagina with his fingers. Victim, claiming she had to use the bathroom, left her bed and told her mother, who was sleeping in a downstairs bedroom, what had happened. Victim's mother later admitted only to have heard about the kissing and hugging. Victim's mother told victim to return to her bed which she did. A short while later, victim's mother heard Erickson cross the hall to her daughters' bedroom. Victim's mother then went upstairs and told Erickson to leave the room and go sleep on the couch. Victim's mother cautioned victim not to tell anyone, allegedly for the purpose of saving victim from embarrassment. In December 1992, some seven months after the alleged incident, victim did tell someone. She told her father, who was divorced from her mother and who saw the children every other weekend according to a visitation schedule. Father immediately reported the incident to the authorities who began an investigation into the matter.

Upon questioning by the investigating police officer, Erickson admitted to having been at the victim's residence at a barbecue and watching television with the victim and her sister in their bedroom. However, he stated he believed this took place in June or July of 1992 rather than in May as the victim reported. Members of Erickson's family who testified at his trial maintained that Erickson had been with them on May 10, assisting with a Mother's Day cub scout banquet. When interrogated about the incident Erickson admitted having consumed twelve beers throughout the day before arriving at the police station shortly after 5:00 p.m. A breathalyzer test given to him immediately following the interrogation showed his alcohol level to be .20.

Erickson was charged with violation of SDCL 22–22–1(5), rape in the third degree, and, in the alternative, SDCL 22–22–7, sexual contact with a child. Prior to trial, Erickson moved to suppress three specific statements he made to the police on grounds they were not voluntarily made and were not relevant evidence. Erickson concluded this motion with a request to suppress *any statements* made by him to the police. At the pre-trial motions hearing, the prosecuting attorney indicated to the court the State intended to offer at trial statements Erickson made to the police officer.

The trial court questioned whether the three statements specifically requested to be excluded were statements or admissions. The trial judge called this the "first hurdle," indicating he would address the voluntariness issue depending upon whether Erickson's comments to the police were statements or admissions. In an attempt to address this "first hurdle," the trial judge requested both parties to submit briefs on the issue, stating that if he found in favor of the State, he would ask both parties, along with the police officer who questioned Erickson, back for another hearing to determine the voluntariness of these statements. Following submission of briefs, the trial court issued its memorandum opinion holding the statements were neither admissions nor a confession, but that the three statements would be excluded from use by the State in its case-in-chief. The court noted that these statements could become relevant and, therefore, admissible depending upon questioning at trial at which time a hearing would first be conducted outside of the jury's presence. The trial court issued its order specifically holding that the State could not use the three statements for its case-in-chief and could not use the statements for rebuttal evidence without first requesting a hearing outside the jury's presence to determine voluntariness. The focus of both the memorandum opinion and subsequent order of the trial court were the three specifically identified statements made by Erickson to the police officer. No testimony was ever taken during the pretrial process

regarding the voluntariness of any of Erickson's statements made to the police officer.

■ At trial, the police officer who interrogated Erickson testified for the State and was asked several questions in the jury's presence regarding Erickson's interrogation, including whether Erickson was given a Miranda warning and whether or not he understood that warning. The officer testified that Erickson was given Miranda warnings and that Erickson had stated he understood them. The officer then testified, "I asked him if he wished to waive his rights and answer the questions." The State did not delve further into whether Erickson had, in fact, waived his rights but continued with direct examination of the officer. When the State began questioning the police officer regarding statements Erickson may have made, during the interrogation, Erickson's attorney made a standing objection, without stating grounds,[1] to the admission of any further statements made by the defendant to the officer. The trial court overruled this objection. The State then elicited testimony from the police officer derived from statements Erickson made to the police which placed Erickson in the victim's bedroom following a barbecue at the victim's residence. The State concluded its direct examination of the police officer with the following testimony:

Q: During your investigation and your interviews, whose statements that you took best supported [victim's] statement to you?

A: I would say the Defendant's in that he was there in the bedroom with her, as she has described to me, along with the other circumstances that [victim] has described to me.

Q: Did Mr. Erickson deny it?

A: No, he didn't.

## ISSUE I: DID THE TRIAL COURT ERR IN FAILING TO REQUIRE A VOLUNTARINESS HEARING OUTSIDE OF THE JURY'S PRESENCE?

■ "Our standard of review regarding voluntariness of confessions or incriminating

1. Ordinarily, a general objection without giving a reason is not fruitful unless the court sustains it.

statements is well established. The State has the burden of proving beyond a reasonable doubt that such confessions or incriminating statements were freely and voluntarily made." *State v. Jenner*, 451 N.W.2d 710, 716 (S.D.1990) (citing *State v. Faehnrich*, 359 N.W.2d 895, 898 (S.D.1984); *State v. Janis*, 356 N.W.2d 916, 918 (S.D.1984)). If the trial court finds beyond a reasonable doubt that the incriminating statements were voluntarily made, that finding is binding upon this Court unless we find, from our review of the record, that the trial court's finding is clearly erroneous. *Jenner*, 451 N.W.2d at 716; *State v. Albright*, 418 N.W.2d 292, 297 (S.D. 1988). "A finding is 'clearly erroneous' when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made." *State v. Almond*, 511 N.W.2d 572, 574 (S.D:1994) (quoting *Selle v. Pierce*, 494 N.W.2d 634, 636 (S.D.1993). In reviewing the trial court's finding on voluntariness, we consider the evidence in the light most favorable to the finding. *State v. Headrick*, 357 N.W.2d 268, 270 (S.D.1984); *State v. Cowell*, 288 N.W.2d 322, 325 (S.D. 1980).

The trial court, over defense counsel's objection, allowed statements made by Erickson to the police to be admitted into evidence during the State's direct examination of the police officer. These statements were admitted in the presence of the jury. We believe that the trial court did find in favor of the State at this point and was required, under previous holdings of this court, to hold a hearing outside of the jury's presence to determine whether those statements were voluntarily made. Defendant argues he was so intoxicated the statements were not voluntary.

In *State v. Thundershield*, 83 S.D. 414, 422, 160 N.W.2d 408, 412 (1968), this court first adopted procedures by which the trial court must determine the voluntariness of confessions and incriminating statements before their admissibility into evidence.

*State v. Rufener*, 392 N.W.2d 424, 427 (1986).

When a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. This proof must be made in an independent hearing of all relevant facts outside the presence of the jury. At this hearing the defendant may testify and be cross-examined as to the issue of voluntariness without jeopardy to or waiver of his right to remain silent at the trial. After hearing the facts the trial judge must finally and solely determine, as a matter of law, whether or not the confession or incriminating statement is, or is not, voluntary. This determination and the evidence upon which it is based should be made part of the record. If found to be involuntary the confession or statements may not be admitted at the trial as evidence. If found to be voluntary they may be admitted in evidence for consideration by the jury as to their weight and credibility together with all other facts and circumstances. No special instructions on this subject should be necessary. ·

*Id.* *Headrick,* 357 N.W.2d at 270; *State v. Janis,* 321 N.W.2d 527, 528–29 (S.D.1982); *Cowell,* 288 N.W.2d at 324; *State v. Stumes,* 90 S.D. 382, 389–90, 241 N.W.2d 587, 591–92, (1976); *State v. Kiehn,* 86 S.D. 549, 555–56, 199 N.W.2d 594, 597–98 (1972); 23 C.J.S. Crim. Law § 939 (1989).

In an opinion authored by Justice Henderson, this court in *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981) upheld Lufkins' conviction when his lawyer agreed to a voluntariness determination of Lufkins' statement to a sheriff in the presence of the jury. In a subsequent habeas proceeding in federal court, the United States District Court held this determination of voluntariness to be inadequate under constitutional due process requirements. *Lufkins v. Solem,* 554 F.Supp. 988 (D.S.D.1983). The United States Eighth Circuit Court of Appeals affirmed, requiring a finding of voluntariness outside of the presence of the jury before allowing a defendant's incriminating statements to be admitted into evidence at trial. *Lufkins v. Solem,* 716 F.2d 532, 536 (8th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)).

In *Lufkins,* the sheriff testified during the State's case-in-chief regarding incriminating statements made by defendant Lufkins. During this testimony, the defendant rose and "challenged the Sheriff's veracity." *Lufkins,* 716 F.2d at 535. The defendant had also offered handwritten objection prior to trial regarding the voluntariness of his statements to the sheriff. However, no pretrial motion to suppress these statements had been made by Lufkins' attorney. *Lufkins,* 716 F.2d at 534. At the conclusion of the sheriff's direct examination testimony, Lufkins' attorney objected on the ground that Lufkins' statements were not voluntarily made. The trial court overruled the objection. *Lufkins,* 716 F.2d at 535. Our court held by so ruling, the trial court implied the statement was given voluntarily. *Lufkins,* 309 N.W.2d at 334.

In the subsequent habeas proceeding, the United States District Court held Lufkins' voluntariness hearing, which involved taking evidence during the course of the trial, in open court, and in the presence of the jury, did not meet the due process requirements set out by the United States Supreme Court in *Jackson v. Denno.* *Lufkins,* 554 F.Supp. at 992. The district court noted "[t]he importance of the voluntariness question cannot be overstated, because '[i]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession.'" *Id.* at 991 (quoting *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964)). "'A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.'" *Id.* (quoting *Jackson,* 378 U.S. at 381, 84 S.Ct. at 1783). The district court, though characterizing Lufkins' attorney's objection as "cursory" and "catchall" and holding that it fell short of the duty of competent representation, determined that the trial court had not made the required clear-cut finding of volun-

tariness before admitting Lufkins' statements at trial. *Lufkins*, 716 F.2d at 536.

The Eighth Circuit Court of Appeals, upholding the district court's decision, stated the trial court was required to provide the defendant with a full and fair voluntariness hearing in order to comply with the Fourteenth Amendment's due process clause. Citing the *Jackson* decision, the court noted the hearing must be " 'fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend.' " *Lufkins*, 716 F.2d at 537 (quoting *Jackson*, 378 U.S. at 391, 84 S.Ct. at 1788). "Providing a defendant with a meaningful opportunity to challenge the state's testimony on voluntariness is not an extravagant, procedural formality to be cast aside when convenient; it is fundamental to a fair and reliable determination of voluntariness and hence firmly rooted in the due process clause of the fourteenth amendment." *Lufkins*, 716 F.2d at 539.

■■■ Here, as in *Lufkins*, no "clear-cut determination" was made by the trial court regarding the voluntariness of Erickson's statements to the police. No evidentiary hearing was held which would have allowed Erickson a "meaningful opportunity to challenge the state's testimony on voluntariness" outside of the jury's presence. There was no finding made by the trial court that the State had met its burden of proving beyond a reasonable doubt that statements made by Erickson to the police were voluntary. The trial court was aware, through defense counsel's pretrial motion, of the level of intoxication of Erickson during interrogation by the police. Erickson, through his attorney, made objection at trial to the admission of any statements he may have made to the police. Though we believe better practice would be to individually object and to state grounds for objection rather than make the standing objection made here, we believe the trial court erred in not stopping the proceedings at this point and holding a hearing outside of the jury's presence to determine the voluntariness of those statements beyond a reasonable doubt prior to their admission into evidence. We believe this to be clear error and reverse and remand for a new trial.[2]

■■■ A defendant may waive his *Miranda* rights provided the waiver is voluntarily, knowingly, and intelligently made. *State v. Braddock*, 452 N.W.2d 785, 788 (S.D. 1990); *State v. West*, 344 N.W.2d 502, 504 (S.D.1984). Determination of an effective waiver requires consideration of the totality of the circumstances in which the waiver was made. *State v. Oster*, 495 N.W.2d 305, 308 (S.D.1993); *State v. Bult*, 351 N.W.2d 731, 735 (S.D.1984). The court looks to the "particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Braddock*, 452 N.W.2d at 788 (quoting *West*, 344 N.W.2d at 504). *See also Bult* at 735. If the trial court finds the waiver to be effective in that it was voluntarily, knowingly, and intelligently made, this court will uphold that finding unless it is clearly erroneous. *Oster*, 495 N.W.2d at 308; *Braddock*, 452 N.W.2d at 788. "Custodial statements made by an intoxicated defendant are not per se involuntary, but rather this is one of the circumstances to be considered by the trial judge in his determination of voluntariness." *State v. Neville*, 312 N.W.2d 723, 727 (S.D.1981), *rev'd on other grounds*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (citing *U.S. v. Brown*, 535 F.2d 424 (8th Cir.1976)). "The trial judge must make the decision regarding voluntariness of the statement in the first instance." *Id.* (citing *Cowell*, 288 N.W.2d at

---

**2.** The dissent would remand this case back to the trial court to determine the voluntariness of Erickson's statements to the police officer. There is some precedent for that position. *See State v. Faller*, 88 S.D. 685, 227 N.W.2d 433 (1975), where this author was the trial judge. But, in this case, can the statements elicited at trial be sorted out from those previously suppressed by the trial court in view of the all-encompassing answers to questions elicited by the prosecutor?

"A: I would say the Defendant's in that he was there in the bedroom with her, as she has described to me, along with the other circumstances that [victim] has described to me.
Q: Did Mr. Erickson deny it?
A: No, he didn't."
We do not believe they can be. Thus, a new hearing cannot, in our opinion, cure the prejudice.

324; *Stumes,* 241 N.W.2d at 591; *State v. Adkins,* 88 S.D. 571, 225 N.W.2d 598 (1975)). Here, the trial court failed to make the decision "in the first instance."

Failure to make a determination on voluntariness requires reversal and is dispositive. However, because we remand for a new trial, we feel it necessary to address certain other issues raised by defendant. *State v. Breed,* 399 N.W.2d 311, 312 (S.D.1987); *State v. Carlson,* 392 N.W.2d 89, 92 (S.D.1986); *State v. Helling,* 391 N.W.2d 648, 650 (S.D.1986).

## ISSUE II: DID THE TRIAL COURT ERR IN LIMITING DEFENDANT'S REQUEST FOR NAMES AND ADDRESSES OF ALL PHYSICIANS OR COUNSELORS WITH WHOM VICTIM MAY HAVE CONSULTED?

■ Evidentiary rulings by the trial court are reviewed under the abuse of discretion standard. *Larson v. Kreiser's, Inc.,* 472 N.W.2d 761, 764 (S.D.1991); *State v. Woodfork,* 454 N.W.2d 332, 335 (S.D.1990); *State v. Seiler,* 397 N.W.2d 89, 91 (S.D.1986). Under this standard, the trial court's determination will not be overruled unless a judicial mind, considering the law and the facts, could not have reached a similar decision. *Dart v. Berghorst,* 484 N.W.2d 891, 894 (S.D. 1992); *State v. Pfaff,* 456 N.W.2d 558, 561 (S.D.1990). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Larson,* 472 N.W.2d at 764; *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D. 1987).

■ Prior to trial, Erickson filed a motion for discovery of names and addresses of all physicians or counselors with whom the victim may have spoken about the alleged sexual conduct. The State claimed it had no knowledge of any such persons or consultations. The trial court ordered the State to provide Erickson with copies of any counselors' reports the State had obtained or may subsequently obtain. The trial court also ordered the State to provide defendant with any releases of information signed by the victim. The court noted specifically that it would not go beyond this order, stating that the victim had a right to consult with coun-selors and/or physicians in private. Erickson argued, without himself knowing whether such material or information existed, that the prosecution should have been ordered to make inquiry of the victim or her mother regarding any counseling the victim may have received.

Erickson contends on appeal the court's ruling on his motion violated SDCL 23A–13–4 and his constitutional due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). *Trombetta* concerns preservation of evidence in the State's possession. *Brady* applies only where the prosecution has suppressed evidence. *Moore v. Illinois,* 408 U.S. 786, 794, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972). Neither *Brady* nor *Trombetta* are applicable here.

■ There is no evidence in the present case that the prosecution ever had the information requested by Erickson. Erickson himself did not know whether such information existed. Consequently, the prosecution could not suppress this evidence. Further, while "the State cannot suppress evidence favorable to [a defendant, it is not] the state's duty to conduct a discovery examination for a defendant." *State v. Chacon,* 50 Wis.2d 73, 183 N.W.2d 84, 86 (1971). "*Brady* does not impose on the prosecution a general duty to help the defense find witnesses who might be favorable to the defendant." *U.S. v. Gonzalez,* 466 F.2d 1286, 1288 (5th Cir.1972). *See also U.S. v. Callahan,* 300 F.Supp. 519, 525 (S.D.N.Y.1969). "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *U.S. v. Beaver,* 524 F.2d 963, 966 (5th Cir.1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756. In *State v. Wade,* 83 S.D. 337, 343, 159 N.W.2d 396, 400 (1968), this court affirmed a trial court's denial of discovery request in a criminal case stating:

[a] general hunting or fishing license should not ordinarily be granted and the time, place, and manner of making the inspection permitted or discovery allowed should be specified. It should ordinarily

be confined to relevant, tangible or written evidential matters and should be denied whenever (1) there is danger or likelihood of witnesses being coerced, intimidated, or bribed; (2) the State may be unduly hampered in its investigation, preparation, and trial of defendant's case or of other related criminal cases; or (3) other evil or danger to the public interest may result from inspection or disclosure.

*Id.*

South Dakota recognizes the abuse of discretion standard in reviewing trial court rulings on evidentiary matters. " 'An accused's application for inspection or disclosure is a matter addressed to the sound discretion of the trial court which may be granted as an aid to the ascertainment of the truth or as a matter of fundamental fairness.' " *State v. Sickler*, 488 N.W.2d 70, 72 (S.D.1992) (quoting *Wade*, 159 N.W.2d at 400). "[T]he extent of discovery permitted by either side rests in the discretion of the court." *State v. Catch the Bear*, 352 N.W.2d 640, 644 (S.D.1984); *State v. Means*, 268 N.W.2d 802, 815 (S.D. 1978); *Wade*, 159 N.W.2d at 400. The Supreme Court of Nebraska also recently noted that unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of the trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676, 692 (1992).

Here, the trial court exhibited both concern for the victim's private right of access to counselors and for fundamental fairness to the State and the defendant in requiring production of all counselors' reports and signed releases obtained by the State. Of its own volition, the trial court issued a continuing discovery order following defendant's indictment which included discovery of matters under SDCL 23A–13–4, upon which defendant relies in this appeal. There is no evidence this order was violated. We affirm the trial court on this issue.

## ISSUE III: DID TRIAL COURT ERR IN GRANTING STATE AN EXTENSION BEYOND THE "180–DAY RULE"

 The "180–day rule" was created by this court in 1985 principally to address ineffective scheduling practices. *State v. Ven Osdel*, 462 N.W.2d 890, 891 (S.D.1990) (citing *State v. Hoffman*, 409 N.W.2d 373, 378 (S.D. 1987). The rule provides that "(1) Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days, and such time shall be computed as provided in this section." SDCL § 23A–44–5.1. It is a rule of court, not a constitutional requirement, standing on separate legal footing than constitutional claims and requiring separate and distinct analysis. *Hoffman*, 409 N.W.2d at 375. Violation of the "180–day rule" is not synonymous with violation of a constitutional right to a speedy trial. *Hoffman*, 409 N.W.2d at 375.

This rule was completely rewritten and reenacted in 1991. Subsection 4 of this statute provides periods to be excluded in the computation of the 180 days. Specifically, subsection 4(a) provides "the time from filing until final disposition of pretrial motions of the defendant" shall be excluded from the computation period. Subsection 4(f) provides that other periods of delay which the court finds are for good cause shall also be excluded from the computation period. *See State v. Anderson*, 417 N.W.2d 403 (S.D.1988).

 Defendant Erickson was indicted January 22, 1993. This started the 180–day time period running. Trial commenced 250 days later, on September 29, 1993. Excluded from this time period under SDCL § 23A–44–5.1(4)(a) is "the time from filing until final disposition" of defendant's pretrial motions. The trial judge required defense to file pretrial motions on or before March 1, 1993. That defense counsel did not actually file these motions until March 5 does not affect the tolling of the statutory period, this delay caused by and operating to defendant's benefit. The trial court reserved ruling on defendant's motions in limine to allow time for both parties to brief the issues before the court. The trial court ruled on defendant's motions on May 25, 1993, 86 days from their filing date. These 86 days are to be excluded, by statute, from the 250 days it took to bring defendant to trial, leaving a total of 164 days. This was well within the statutory

period. Any issue of whether trial court erred in granting the State an extension is moot, defendant having been brought to trial within the 180–day requirement.

## ISSUE IV: DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT JURY ON DEFENDANT'S GOOD CHARACTER

■ Defendant claims error because the trial court refused his requested instruction on character evidence. He cited no authority and ordinarily, those issues are considered as waived. SDCL 15–26A–60(6). *State v. Dixon*, 419 N.W.2d 699, 701 (S.D.1988); *State v. Davis*, 401 N.W.2d 721, 726 (S.D.1987); *Corbly v. Matheson*, 335 N.W.2d 347, 348 (S.D. 1983). However, we have considered the issue and, under the evidence presented in this case, we determine the trial court did not err in refusing the instruction.

■ Erickson further claims a clerical error in polling the jurors violated his constitutional right to an unanimous verdict. Since we reverse and remand this case for a new trial, we do not consider the issue of jury polling. We have considered defendant's remaining issues, and find no error under this record.

SABERS and AMUNDSON, JJ., concur.

MILLER, C.J. and KONENKAMP, J., dissent.

KONENKAMP, Justice (dissenting).

I respectfully dissent on Issue One. This case should be remanded for a voluntariness hearing. If the trial judge determines the statements admitted in the first trial were involuntary, then the statements should be excluded and a new trial ordered. If the judge determines the statements were voluntary, then the judgment should be affirmed. This Court adopted the same procedure in *State v. Stumes*, 90 S.D. 382, 241 N.W.2d 587 (1976).

Even under the majority's holding, the trial court must now proceed to conduct a voluntariness hearing before the new trial. If the court determines the statements were voluntary then the new jury will presumably hear the same evidence offered in the first trial. For what purpose then is the majority ordering a new trial? The jury will not be determining the statements' voluntariness. We adopted the so-called orthodox rule in *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968), sanctioned by the United States Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Under this rule the "judge solely and finally determines the voluntariness of the confession...." *Thundershield*, 160 N.W.2d at 411. If and only if the trial court on remand determines that the statements were not voluntary, will a new trial be necessary, because only then will the new jury not be hearing essentially the same evidence the first jury heard.

The United States Supreme Court approved this very procedure thirty years ago:

> But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that [the defendant's] confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for [the defendant] has already been tried by a jury with the confession placed before it and has been found guilty.

*Jackson v. Denno*, 378 U.S. at 394, 84 S.Ct. at 1790; *see also Boles v. Stevenson*, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964). The Court in *Lufkins v. Solem*, 716 F.2d 532 (8th Cir.1983), relied upon by the majority, rejected the Supreme Court's recommendation in *Jackson v. Denno, supra,* but for two clearly distinguishable reasons not present in this case. First, in *Lufkins* a new trial was ordered because original trial counsel failed to sequester three "unreliable eyewitnesses" and a new voluntariness hearing could not cure the prejudice to the original jury. *Id.* at 542. Second, the *Lufkins* court reasoned:

> [E]ven if a full and fair voluntariness hearing determines that Lufkins' statement was properly admitted during Lufkins' trial, this would not cure the prejudice caused by the jury's presence when the trial court took testimony on the voluntariness of Lufkins' statement and ruled that

the statement was voluntary for purposes of admissibility.

*Id.* Here the trial court made no such ruling in the jury's presence. So unlike in *Lufkins,* the trial judge did not infringe on the jury's right to accept or reject Erickson's statements. Defense counsel's general objection fails to preserve for appellate review any other purported error. *State v. Kaiser,* 504 N.W.2d 96 (S.D.1993); *State v. Rufener,* 392 N.W.2d 424 (S.D.1986), *modified in part,* 401 N.W.2d 740 (S.D.1987).

I am authorized to state that Chief Justice MILLER joins this dissent.