#30289-r-PJD
**2024 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

KENNETH LEROY KURTZ,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KENT A. SHELTON
Judge

\* \* \* \*

TUCKER J. VOLESKY
Huron, South Dakota                    Attorney for defendant
                                       and appellant.


MARTY J. JACKLEY
Attorney General

SHALE R. KRAMME
Assistant Attorney General
Pierre, South Dakota                   Attorneys for plaintiff
                                       and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 7, 2023
OPINION FILED **02/28/24**

#30289

DEVANEY, Justice

[¶1.]	Kenneth Leroy Kurtz pled guilty to possession of a controlled substance, a Class 5 felony, in violation of SDCL 22-42-5. At his sentencing hearing, the circuit court found aggravating circumstances justifying a departure from presumptive probation under SDCL 22-6-11. The court sentenced Kurtz to five years in prison. Kurtz appeals, arguing that he should have received presumptive probation because although the court found aggravating circumstances, the court further found that he did not pose a significant risk to the public. In the alternative, he argues that the court abused its discretion by imposing the maximum prison sentence. We vacate and remand for the circuit court to enter a sentence of probation.

## Factual and Procedural Background

[¶2.]	On March 23, 2022, a Huron police officer initiated a traffic stop on a vehicle that was speeding. After identifying Kurtz as the driver, the officer determined that Kurtz was driving without a valid license and noticed that he was fidgeting and unable to sit still. The officer obtained Kurtz's consent to search his vehicle and his person. During the search of Kurtz, the officer found two zip-top bags containing crystal residue that tested positive for methamphetamine, and during the search of the vehicle, the officer found a zip-top bag in a cigarette pack on the driver's seat with a burnt straw containing a substance that appeared to be methamphetamine. Kurtz was charged with driving without a valid license and possession of a controlled substance. Kurtz later pled guilty to possession of a

-1-

controlled substance, a Class 5 felony, and the State dismissed the charge of driving without a valid driver's license.

[¶3.] Kurtz's sentencing hearing was continued at the request of both parties because he had applied to participate in the Beadle County drug court program. His application was ultimately denied on January 17, 2023, and the circuit court proceeded with a sentencing hearing on February 14, 2023. At the sentencing hearing, the State's Attorney advised the court that Kurtz was not accepted into the drug court program because he was "too far along in his recovery." The State further advised that because of this progress, the State was recommending a suspended execution of sentence.

[¶4.] Kurtz's counsel likewise requested that the circuit court suspend any sentence imposed and place Kurtz on probation. In support of this request, counsel offered documentation from treatment providers showing that Kurtz had successfully completed an anger management course and an intensive outpatient program and that he was currently in session 29 out of the 39 required sessions of the Cognitive Behavioral Interventions for Substance Abuse program. Counsel further advised that Kurtz had obtained a driver's license and vehicle insurance, was currently employed, and was the primary caretaker of his partner of six years and her teenage son.

[¶5.] As background information, Kurtz's counsel also offered a psychological evaluation report conducted in March 2022, just before his arrest on the charges at issue. The evaluation was conducted based on a referral from the Department of Human Services to determine whether Kurtz's Social Security

Supplemental Income (SSI) benefits could be restored.[1] This report details Kurtz's social and developmental history and provides an assessment of his social, emotional, cognitive, and behavioral status. The report notes that Kurtz, who was 50 years old at the time of the evaluation, had been diagnosed with Attention-Deficit-Hyperactivity Disorder Combined Presentation as a child and was placed in special education classes where he remained until finishing high school. He began using cocaine at age 19, but he reportedly completed residential treatment and stayed clean for 15 years. At some point, Kurtz served 17 months in a Washington State prison. He thereafter started using methamphetamine and was arrested and convicted of drug possession. The report states that Kurtz served 22 months in the South Dakota State Penitentiary for this offense and was released in July 2021.

[¶6.] The report also notes Kurtz's history of multiple hospitalizations for psychiatric treatment due to suicide attempts and lists several mental health diagnoses, including major depressive disorder, intellectual disability (mild), and cocaine use disorder (in remission). The report also lists several medical diagnoses, including chronic obstructive pulmonary disease and arthritis of the back and neck. According to the report, Kurtz is unable to manage his own finances and relies on a representative payee to pay his bills and manage his finances. The report recommends the continued use of a payee if his SSI benefits are reinstated.

[¶7.] Based on Kurtz's significant progress since the time of his arrest, Kurtz's counsel advised the court that Kurtz's psychiatric case manager opined that

---

1. The psychological evaluation states that Kurtz had previously been found eligible for SSI benefits and was applying to have them reinstated as he was no longer an inmate in prison.

he would not be a significant threat to the community, a view that, according to counsel, is supported by the reports submitted to the court. Kurtz personally addressed the court and apologized for his relapse. He explained that he had numerous family members who had passed away in the last year, including his mother who had recently died, and that he had promised her that he would not relapse again.

[¶8.] Prior to pronouncing its sentence, the circuit court stated that it had reviewed the reports from Kurtz's treatment providers. The court also referenced Kurtz's previous criminal record.[2] The court then detailed several aggravating factors it found to exist, including prior failures to comply, prior probation and parole violations, previous failures to appear, and failures to pay court-ordered fines. The court emphasized Kurtz's 15 prior felony convictions and noted that the current crime occurred while he was on parole. The court also referred to Kurtz being arrested for simple assault while on parole on September 27, 2022, a charge that, according to the court, was later reduced to disorderly conduct.[3]

[¶9.] In pronouncing Kurtz's sentence, the circuit court stated: "Well - - and I agree with [defense counsel], I don't know that you're much of a threat to society.

---

2.    The sentencing transcript indicates that Kurtz waived a presentence investigation report, and his criminal history is not contained in the underlying record. The circuit court did not indicate how it had accessed this record nor did it take judicial notice of any other criminal files. As a result, the record is scant as to the nature of Kurtz's prior felonies, when the felonies were committed, and the timing and nature of the parole and probation violations.

3.    There is no record of the simple assault charge that was later reduced to disorderly conduct in the underlying appellate record.

But at some point, we don't deal any longer with whether you're a threat to society, but it's simply punishment. And somebody that comes in front of me with 15 prior felonies and asks that I just suspend the jail time, I don't know how I can do that in good conscience." The court then imposed the maximum sentence of five years in the penitentiary. Kurtz appeals, asserting that he should have received the presumptive sentence of probation under SDCL 22-6-11.[4]

**Analysis and Decision**

[¶10.] Kurtz contends the circuit court erred in its interpretation and application of the directives in SDCL 22-6-11 when imposing a penitentiary sentence rather than probation. He argues that because the court stated it could not find that he posed a significant risk to the public, "the departure from presumptive probation was impermissible." In response, the State does not address the import of the circuit court's statement. Instead, the State argues that departure was warranted because the aggravating circumstances identified by the court "are identical to those that this Court has repeatedly determined pose a significant risk to the public."

[¶11.] Criminal defendants, like Kurtz, who are convicted of a Class 5 or Class 6 felony that is not specifically excluded from the provisions of SDCL 22-6-11, must be sentenced in accord with the directives in this statute. Relevant here, SDCL 22-6-11 provides:

> The sentencing court shall sentence an offender convicted of a
> Class 5 or Class 6 felony . . . to a term of probation. If the

---

4.    Given our disposition of his appeal, we need not address Kurtz's alternative argument that the circuit court abused its discretion in sentencing him to the maximum authorized term of imprisonment.

offender is under the supervision of the Department of Corrections, the court shall order a fully suspended state incarceration sentence pursuant to § 23A-27-18.4. The sentencing court may impose a sentence other than probation or a fully suspended state incarceration sentence if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation under this section. If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order.

To depart from a presumptive sentence of probation, the court must therefore identify that "aggravating circumstances exist *that pose a significant risk to the public* and require a departure from presumptive probation under this section." *Id.* (emphasis added).

[¶12.] Whether the circuit court misinterpreted or misapplied SDCL 22-6-11 involves a question of statutory interpretation, which we review de novo, with no deference given to the circuit court's legal conclusions. *State v. Underwood*, 2017 S.D. 3, ¶ 5, 890 N.W.2d 240, 241; *State v. Whitfield*, 2015 S.D. 17, ¶ 11, 862 N.W.2d 133, 137.

[¶13.] Based on the transcript of the sentencing hearing, it is apparent that the circuit court did not properly apply the statute here. Instead of finding aggravating circumstances that reveal Kurtz poses a significant risk to the public, as required by the statute to depart from presumptive probation, the court found the opposite—despite the existence of aggravating circumstances, Kurtz is not "much of a threat to society." The court's further statement that departure is warranted because "at some point, we don't deal any longer with whether you're a threat to society, but it's simply punishment" is flatly contrary to the mandate in

SDCL 22-6-11. If no aggravating circumstances are found that *pose a significant risk to the public*, then departure from presumptive probation is not allowed under SDCL 22-6-11.

[¶14.] What constitutes aggravating circumstances posing "a significant risk to the public" is not defined by statute. Likewise, this Court has not provided a definition of this phrase, perhaps because it is not one that can be precisely defined. Our precedent, however, offers some guidance as to what this Court has or has not deemed to be aggravating circumstances constituting a significant risk to the public. For example, we determined that a "failure to pay fines, costs, restitution, or attorney fees hardly amounts to a 'significant risk to the public[.]'" *Underwood*, 2017 S.D. 3, ¶ 7, 890 N.W.2d at 242 (alteration in original). We have also rejected the notion that "SDCL 22-6-11 contemplates only circumstances demonstrating a risk of violence or career criminality." *Id.* ¶ 8. On the other hand, we have determined that prior criminal history and probation or parole violations *may* constitute aggravating circumstances posing a significant risk to the public. *See, e.g., State v. Beckwith*, 2015 S.D. 76, ¶ 11, 871 N.W.2d 57, 60 (noting that "[t]he likelihood of not complying with the conditions of probation is an appropriate aggravating circumstance to consider as it *may* signal a significant risk to the public" (emphasis added)).

[¶15.] What has not been emphasized in our prior cases is that while a defendant's history may present aggravating circumstances, the sentencing court's required finding under SDCL 22-6-11 must focus on the relationship of those circumstances to public safety. Therefore, while it is true that prior felonies and

prior probation violations can constitute aggravating circumstances that pose such a risk, it is not a foregone conclusion that all defendants with lengthy prior criminal histories or a history of noncompliance categorically pose a significant risk to the public. Importantly, sentencing courts should not, as a matter of course, ignore recent prognostic indicators suggesting the defendant does not presently pose a significant risk to the public. As this Court has often stated, sentencing involves considering the totality of the circumstances as to *the individual* defendant before the court, and this same governing principle applies when a court makes its ultimate determination whether to depart from the otherwise mandated presumptive probation. *See State v. Seidel*, 2020 S.D. 73, ¶ 47, 953 N.W.2d 301, 316–17 (noting that "the court is to acquire a thorough acquaintance with the character and history of the person before it" by considering "the defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation and previous criminal record, as well as the rehabilitative prospects of the defendant" (internal citations omitted)); *see also Underwood*, 2017 S.D. 3, ¶ 9, 890 N.W.2d at 242–43 (considering the totality of the circumstances when departing from presumptive probation).

[¶16.]     Here, it appears the circuit court considered many of these factors and found them to be aggravating, but the court then specifically found that Kurtz does not pose a significant risk to the public. Therefore, the court erred when it departed from a presumptive probation sentence under SDCL 22-6-11. Accordingly, we

#30289

vacate the court's sentence and remand for the court to enter a sentence of probation.

[¶17.]       Vacated and remanded.

[¶18.]       JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.